UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDRES SOSA, <br> *Plaintiff*, | ) <br> ) <br> ) | 3:20-CV-382 (SVN) |
| v. | ) <br> ) | |
| CHRISTOPHER SWEET, et al., <br> *Defendants*. | ) <br> ) <br> ) <br> ) | March 30, 2023 |

**<u>RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Andres Sosa, a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), alleges that Defendants—Dr. Craig Burns, Dr. Robert Berger, and Advanced Practice Registered Nurses ("APRN") Andrea Reischerl and Carole Wright—were all involved in, or otherwise supported, the decision to stop treating Plaintiff with a mental health medication called Wellbutrin. Plaintiff alleges that this decision showed deliberate indifference to Plaintiff's mental health and well-being, in violation of the Eighth Amendment to the United States Constitution. Presently before the Court is Defendants' motion for summary judgment, seeking to dismiss the complaint in its entirety. For the reasons described below, the Court GRANTS Defendants' motion.

I.      FACTUAL BACKGROUND[1]

A.  Plaintiff's Medical History

Plaintiff, who was housed at Corrigan-Radgowski Correctional Center during the relevant time period, has a fairly lengthy mental health treatment history; the Court includes only the information necessary for the instant motion. In May of 2015, Plaintiff was diagnosed with, among other things, depression, impulse disorder, and suicidal threats. Def's L.R. 56(a)1 St., ECF No. 121 ¶ 10. A few months later, in October and November 2015, Plaintiff was prescribed Wellbutrin and Zoloft, respectively, to treat these mental health issues. *Id.* ¶ 8.[2] As Plaintiff's claims largely center around his access to Wellbutrin, the Court briefly addresses the nature and uses of this drug.

Wellbutrin currently has an "FDA indication" as a treatment for major depressive disorder and seasonal affective disorder, and to assist a patient in efforts to quit smoking. *Id.* ¶ 18. An "FDA indication" means that there is sufficient data for the United States Food and Drug Administration to certify that a given medication is safe and effective as a treatment for a specific ailment. *Id.* ¶ 19. That Wellbutrin does not have an indication for any other psychiatric disorder indicates, at a minimum, there is insufficient data to support the effectiveness of Wellbutrin at treating those other disorders. *Id.* ¶ 20.

---

[1] Initially, many of the facts in the instant litigation are disputed by the parties. In fact, in Plaintiff's Local Rule 56(a)2 Statement he has disputed, or objected to, nearly every fact presented by Defendants in their Local Rule 56(a)1 Statement. *See* ECF No. 134 at 19–41. Many of these objections, however, are made only on the ground that "Plaintiff lacks personal knowledge to the defendant's [sic] allegations here and leave it up [sic] to their proof." *See, e.g.*, Pl.'s L.R. 56(a)2 St. ¶¶ 18–25, 28–31, 33–39, 41, 49, 51–61, 64–65, 68, 74, 76–78. Such objections simply point the Court to the proof offered by Defendants for each of these paragraphs but do not present any evidence or argument as to why such facts are disputed. Thus, where Plaintiff has made only an objection of this type, and Defendants' assertion is supported by evidence in the record, the Court will deem the fact admitted for purposes of summary judgment. *See* D. Conn. L. R. 56(a)3. Where a fact is undisputed, or deemed admitted, the Court cites only to Defendants' Local Rule 56(a)1 Statement.

[2] Plaintiff objects to this assertion, insofar as he asserts that he was actually taking several additional medications. Pl.'s L.R. 56(a)2 St., ECF No. 134 ¶ 8. While this may be true, for purposes of the present motion it is only relevant that Plaintiff was on Wellbutrin.

In addition to its approved uses, Wellbutrin can also be crushed and inhaled through the nose to provide a high similar to cocaine. *Id.* ¶ 25. For that reason, if an inmate has a prescription for Wellbutrin but chooses not to use it themselves, there is a market within prisons for that inmate to potentially resell the medication. *Id.* If Wellbutrin is ultimately passed to someone who does not have a prescription for it, and that individual ingests the drug, it could have severe consequences, including possible death. *Id.* To prevent this, individuals receiving mental health medications, including Wellbutrin, are directly observed by medical staff while the pills are administered. *Id.* This is done to ensure the inmates are correctly taking the medication as prescribed. *Id.*

At some point after Plaintiff was prescribed Wellbutrin, though precisely when is not clear from the parties' submissions, Defendants began to suspect that Plaintiff was "cheeking" or "palming" his medications. *Id.* ¶ 9. Both of these behaviors are strategies that allow a patient not to take his or her medication when it is distributed, but, rather, to keep it for later use. *Id.*[3]

In addition, and apparently unrelated to, the palming and cheeking, on August 24, 2016, Plaintiff had his first appointment with Defendant Wright, who is an APRN and is board-certified as a family nurse practitioner and a psychiatric mental health nurse practitioner. *Id.* ¶¶ 12, 66. She was the primary prescriber assigned to Corrigan-Radgowski Correctional Center, and had authority and autonomy in the treatment of inmates housed in the facility. *Id.* ¶ 64. During this appointment, Defendant Wright began to question whether Plaintiff's medication was effective. *Id.* This was because Plaintiff reported that he felt helplessness, stress, and that his anger was out

---

[3] Plaintiff objects to Defendants' evidence in support of their contention that Plaintiff was not taking his medication correctly on the ground that the records offered are inadmissible hearsay and should not be considered on a motion for summary judgment. Pl.'s L.R. 56(a)(2) St. ¶ 9. Defendants have not filed a reply addressing this contention. While the Court believes Plaintiff may well be correct in his argument, it need not, and will not, resolve this hearsay objection because Defendants' allegations regarding Plaintiff cheeking and palming his Wellbutrin are not necessary to the Court's resolution of Defendants' motion.

3

of control. *Id.* After hearing this update from Plaintiff, Defendant Wright specifically began to question whether the Wellbutrin, as a stimulant, was increasing his irritability and anger. *Id.* When Defendant Wright attempted to discuss whether to remove Plaintiff from Wellbutrin, however, Plaintiff became agitated and demanded he be put on another medication called Ativan instead. *Id.* In response, Defendant Wright promised to review Plaintiff's treatment plan and medication prior to their next appointment. *Id.*

Plaintiff next had an appointment with Defendant Wright on October 26, 2016. *Id.* ¶ 13. During this appointment, Plaintiff informed Defendant Wright that his current level of medication was not working for him, and he requested an increased dosage. *Id.* Defendant Wright discussed Plaintiff's present and past medication history and the efficacy of each. *Id.* After this discussion, Defendant Wright began to question whether Plaintiff actually suffered from antisocial personality disorder, rather than the previously-diagnosed depression. *Id.* Importantly, antisocial personality disorder is a condition not treated with medication, but, rather, is addressed through "programming and learning life skills." *Id.* ¶ 17. Based on these doubts, and that antisocial personality disorder is not treated with Wellbutrin, Defendant Wright determined that she would discontinue prescribing Wellbutrin to Plaintiff. *Id.* ¶ 13.

Almost a month later, on December 21, 2016, Plaintiff returned to see Defendant Wright. *Id.* ¶ 14. During this appointment Plaintiff requested he be placed back on Wellbutrin. *Id.* Also, around this time, Plaintiff had declared a "hunger strike," meaning there were documented refusals by Plaintiff to eat or drink. *Id.* Defendant Wright informed Plaintiff that she could not reinstate his Wellbutrin while he was on hunger strike as that could lead to potentially serious and harmful side-effects, including death. *Id.*

Plaintiff had his final appointment with Defendant Wright on March 3, 2017.  *Id.* ¶ 15.  During this appointment Plaintiff complained that he had been feeling depressed and angry since he was taken off Wellbutrin approximately five months earlier.  *Id.*  Defendant Wright noted, once again, that Plaintiff was exhibiting signs of antisocial personality disorder, but nonetheless offered Plaintiff the opportunity to try a new anti-depressant treatment that he had not previously attempted.  *Id.*  Plaintiff declined this medication, claiming that only Wellbutrin helped him.  *Id.*

      B.  <u>Oversight of Plaintiff's Treatment</u>

In addition to Defendant Wright providing direct treatment to Plaintiff, certain other Defendants are alleged to have reviewed Defendant Wright's decisions.  First, Defendant Reischerl, along with Defendant Burns, provided oversite of the mental health and addiction services given to inmates.  *Id.* ¶ 35.  As part of her job responsibilities, Defendant Reischerl, who was an APRN employed by DOC's Health and Addiction Services, *id.* ¶ 34, often worked directly with inmates who believed they were not receiving adequate mental health treatment.  *Id.*  In the rare instances where she was unable to resolve an issue raised by one of the inmates, she would immediately contact Defendant Burns, and the two of them would attempt to correct the issue.  *Id.* ¶ 36.  As a result of Defendant Reischerl's effectiveness, however, complaints were often never sent to or seen by Defendant Burns.  *Id.* ¶ 37.

Defendant Reischerl first became aware that Plaintiff was concerned his mental health needs were not being met in December of 2015, when Plaintiff wrote to her.  Reischerl Decl., Exhibit 1, ECF No. 101-5 at 10.  In January of 2016, she informed Plaintiff that the best course of conduct would be to try to work directly with the mental health staff at the facility to address the issue, but if he remained unhappy with the treatment he was receiving he should reach out directly to Defendant Berger, who was in a better position to assess Plaintiff's care.  *Id.* ¶ 39.

After this communication, Defendant Reischerl was next involved in Plaintiff's care more than a year later, in February of 2017, when she learned Plaintiff's prescription for Wellbutrin had been discontinued. *Id.* ¶ 40.  Upon learning this, she reviewed Plaintiff's medical chart and spoke to Defendant Wright. *Id.* ¶ 41.  During this conversation, Defendant Wright informed Defendant Reischerl that Plaintiff had reported the Wellbutrin was not working, as he still had "passive suicidality" and hopelessness while on the medication. *Id.* ¶ 47.  Further, Defendant Wright reported that Plaintiff had a history of "hoarding" his Wellbutrin. *Id.*[4]  For these reasons, Defendant Wright informed Defendant Reischerl that she believed it was clinically appropriate to discontinue Plaintiff's use of Wellbutrin and begin seeking alternate treatment options. *Id.* Defendant Reischerl conveyed these comments to Plaintiff and encouraged him to work with mental health staff, noting that she could not direct a provider to prescribe a particular medication. Reischerl Decl., ¶ 13.  On March 22, 2017, Maria Cruz, who works for the Office of Protection and Advocacy for Persons with Disabilities, and who appeared to have been working with Plaintiff to voice his concerns, contacted Defendant Reischerl to inquire whether Plaintiff could be placed on Wellbutrin. *Id.* ¶ 48; Reischerl Decl. ¶ 15.  Reischerl responded to Cruz the same day via email, copying Defendants Burns and Berger, to convey Defendant Wright's reasons for discontinuing Wellbutrin.  Reischerl Decl., ¶ 15.  Cruz in turn conveyed this information to Plaintiff via letter, and Defendant Reischerl was not contacted again about this issue. *Id.* ¶¶ 49, 50.  Despite that Defendants Burns and Berger were included on this email, it appears the issues presented by Plaintiff were never formally elevated to either Burns or Berger such that either Defendant would have officially reviewed the decisions made by Defendant Wright. *Id.* ¶¶ 55, 63.

---

[4] Plaintiff objects to the fact that he had been "hoarding" his medication as there are no disciplinary or other reports that claim he had been doing this. Pl.'s L. R. 56(a)2 St. ¶ 47.  Plaintiff does not, however, voice any objection to the idea that Defendant Wright told Defendant Reischerl that Plaintiff had been hoarding his medication.  Thus, the Court will accept that such information was passed between these Defendants.

6

After these communications took place, in June 2017, Plaintiff was transferred to Cheshire Correctional Institution, where he remains incarcerated. *Id.* ¶ 4. Upon being transferred to Cheshire Correctional Institution, Plaintiff's prescription for Wellbutrin was reinstated. ECF No. 101-8 ¶ 27. Plaintiff then filed the instant action in March of 2020, and his Eighth Amendment claim for deliberate indifference to his health was allowed to proceed past initial review. ECF Nos. 1, 15.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It

7

need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "[O]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### III.  DISCUSSION

Defendants' motion for summary judgment makes several arguments in favor of dismissing Plaintiff's claims. Specifically, Defendants argue that Plaintiff's claims fail on the merits, but even if that is not the case, that Plaintiff failed to exhaust his administrative remedies, and that

Defendants are entitled to qualified immunity. The Court agrees that Plaintiff's claim fails on the merits, and, therefore, Defendants are entitled to summary judgment.

### A. Eighth Amendment Deliberate Indifference

Plaintiff's claim arises under 42 U.S.C. § 1983, which "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). Relevant here, the Eighth Amendment to the U.S. Constitution prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, including punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The standard of "deliberate indifference to a prisoner's serious medical need" includes both subjective and objective components. *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702, and *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Id.* at 184.

The objective component requires the plaintiff to demonstrate that he had a sufficiently serious "medical need," in other words, a "serious illness or injury resulting in the infliction of

unnecessary pain and suffering." *Id.* at 183–84 (citing *Estelle*, 429 U.S. at 105). In addition, the subjective component requires the plaintiff to demonstrate that the prison official's actions were more than "an inadvertent failure to provide adequate medical care[.]" *Id.* (citing *Estelle*, 419 U.S. at 105–06). *See also Chance*, 143 F.3d at 703 (explaining that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim"). Rather, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety," which is "a state of mind equivalent to the familiar standard of recklessness as used in criminal law." *Smith*, 316 F.3d at 184 (internal quotation marks omitted) (quoting *Chance*, 143 F.3d at 702, and *Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002) (per curiam)). Although "'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

Here, Defendants have conceded that, for purposes of summary judgment, Plaintiff's mental health issues constitute a sufficiently serious medical condition to satisfy the objective first prong. Thus, the only question for the Court is whether the Defendants' actions demonstrated that they knew of and disregarded a sufficiently serious medical risk to the Plaintiff. The Court will address each Defendant in turn.

### B. Defendant Wright

As to Defendant Wright, Defendants argue all decisions she made were supported by the medical record and made in an effort to best treat Plaintiff. Plaintiff counters that Defendant Wright exhibited deliberate indifference in two distinct ways. First, he contends that Defendant

10

Wright had no authority to discontinue his medications, as she was not licensed to stop Plaintiff's prescriptions. ECF No. 134 at 9–10. Second, he asserts that, even if she were licensed to do so, Defendant Wright discontinued his prescriptions for depression—particularly his prescription for Wellbutrin—for no legitimate reason. *Id.* at 8–9. Neither of Plaintiff's arguments suffice to create a triable issue of material fact.

Initially, the evidence in the record establishes that Defendant Wright was board certified as a psychiatric mental health nurse practitioner, Wright Decl., ECF No. 101-8 ¶ 3, and that she was appropriately credentialed by the University of Connecticut Health Center and was in fact authorized to "independently adjust, titrate, add and discontinue medications." Berger Decl., ECF No. 101-7 ¶ 11. Moreover, documents submitted by Plaintiff himself concerning Defendant Wright's credentials and duties lend further support to the facts that Defendant Wright was licensed as a registered nurse in Connecticut, ECF No. 134-10 at 3, and that APRNs are tasked with "medication management for consumers suffering from medical and/or mental health conditions." *Id.* at 6. Indeed, under the heading "Examples of Duties" of an APRN, the duty of "prescribing medication and monitoring responses to medications and adjusting accordingly" is listed. *Id.* In opposition to this evidence, Plaintiff simply argues that Defendant Wright is not licensed to practice mental health medicine and thus was not authorized to adjust Plaintiff's medications. ECF No. 134 at 9-10. Unfortunately for Plaintiff, however, his contention is belied by the evidence in the record, and he "may not rely on conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). Since the only evidence presented by Plaintiff to show Defendant Wright was not authorized to adjust his prescriptions are conclusory statements that are in fact contradicted by the very evidence Plaintiff has submitted to the Court, there is no

genuine issue of material fact as to whether Defendant Wright was permitted to adjust Plaintiff's medication and no reasonable jury could find otherwise.

Plaintiff's contention that Defendant Wright arbitrarily discontinued his medication, with no regard to the harmful effect it would have on him, fares no better. Initially, it is long settled in the Second Circuit that a simple disagreement over a course of treatment does not violate the Eighth Amendment. *Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010) (summary order). Moreover, it is settled that simple negligence or medical malpractice does not violate a plaintiff's Eighth Amendment rights. *Chance*, 143 F.3d at 703. For these reasons, neither Plaintiff's disagreement with Defendant Wright's decision to discontinue his prescription for Wellbutrin nor a question of whether that decision was the best approach, or even a correct approach, would suffice to defeat Defendant's motion. Rather, the question before the Court is whether Defendant Wright was subjectively aware of, and disregarded, a substantial risk of harm to the Plaintiff. Here, the record establishes that she did not.

Initially, Wright avers that she met with Plaintiff in August 2016 and almost immediately began questioning whether Plaintiff was prescribed the correct mental health medication. Wright Decl., ¶ 14. This was due, at least in part, to the fact that despite being on the highest allowable dose of Wellbutrin Plaintiff was still reporting feelings of hopelessness, stress, and anger. *Id.* Therefore, Defendant Wright made the decision to taper Plaintiff off of Wellbutrin, as she believed it more likely that Plaintiff suffered from anti-social personality disorder than depression and Wellbutrin is not a treatment for anti-social personality disorder. *Id.* ¶ 15. Nevertheless, as

Plaintiff had continued to report feelings of hopelessness and depression after being removed from Wellbutrin, Defendant Wright provided Plaintiff the opportunity to try alternate depression medication. *Id.* ¶¶ 15–17. Plaintiff refused this alternate medication. *Id.* ¶ 17. Defendant Wright's statements in support of the motion for summary judgment are further supported by contemporaneous treatment notes made at the time of her appointments with Plaintiff. *See* ECF No. 102 at 93–95, 98.

It thus appears to the Court that Defendant Wright was exercising her medical judgment to treat Plaintiff in the way that she believed would be most beneficial for him. That Plaintiff disagreed with this course of treatment does not give rise to a constitutional violation. In fact, other than Plaintiff's conclusory assertions that only Wellbutrin helped his symptoms, there is no evidence in the record that Defendant Wright had any suspicions that taking Plaintiff off the Wellbutrin would expose him to any risk of harm. Moreover, Plaintiff's repeated assertions that only Wellbutrin worked are undermined by his additional repeated assertions of feelings of hopelessness and depression while taking Wellbutrin. *See* ECF No. 102 at 98 (noting Plaintiff's statement that he "feel[s] hopeless/stressed").

Plaintiff appears to argue that Defendant Wright failed to provide evidence supporting her contentions that: (i) his mental condition was not made worse as a result of being taken off Wellbutrin; or (ii) that the treatment she prescribed was appropriate. ECF No. 134 at 11. Based on its review of the record, the Court disagrees. In any event, at most, this argument falls squarely within the realm of a disagreement about the appropriateness of a particular treatment, which cannot form the basis of an Eighth Amendment claim, as discussed above.

Plaintiff points the Court to *Mercado v. Department of Corrections*., No. 3:16-CV-1622 (VLB), 2018 WL 2390139 (D. Conn. May 25, 2018), and argues that here, as in that case, there

13

are questions of fact precluding summary judgment. ECF No. 134 at 6. In making this argument, however, Plaintiff overlooks one major difference between *Mercado* and the instant case. In *Mercado*, the Defendants had failed to produce contemporaneous medical notes discussing the decision to discontinue the plaintiff's medication. *Mercado*, 2018 WL 2390139 at *8. This created a genuine dispute of material fact over the defendants' subjective belief leading to the discontinuation of the plaintiff's medication. *Id.* Here, Defendants have produced precisely the type of information and notes that were missing in *Mercado*. *See* ECF No. 102 at 93–95, 98. Moreover, as discussed above, those notes further support Defendants' proffered reasons for discontinuing Plaintiff's Wellbutrin. Thus, this case is distinguishable from *Mercado* and more akin to a simple disagreement between Plaintiff and Defendants over the best treatment for him. As Plaintiff has failed to present any evidence demonstrating a material dispute of fact regarding Defendant Wright's subjective intent, Defendants' motion for summary judgment is granted as it pertains to Defendant Wright.

      C.  <u>Defendant Reischerl</u>

Turning next to Defendant Reischerl, Plaintiff argues that she is subject to supervisory liability for failing to intervene and override the treatment implemented by Defendant Wright. ECF No. 10 at 125. While it is true that Defendant Reischerl had some supervisory responsibilities over Defendant Wright, construing Plaintiff's arguments liberally, he complains that Defendant Reischerl took, or failed to take, specific action leading to a depravation of Plaintiff's rights. Thus, the Court will examine whether the actions Defendant Reischerl took directly violated Plaintiff's constitutional rights. For their part, Defendants contend that Defendant Reischerl did in fact examine Plaintiff's case and ultimately determined that the proposed treatment plan from Defendant Wright was adequate and there was no need for her to step in or elevate the issue to

Defendants Burns or Berger.  ECF No. 101-1 at 15.

The record before the Court demonstrates that Defendant Reischerl responded in a timely fashion to Plaintiff's initial December 2015 letter about his mental health needs not being met.  ECF No. 101-5 at 10.  Defendant Reischerl then received a letter from Ms. Cruz on January 24, 2017, requesting Defendant Reischerl look into the treatment Plaintiff was receiving.  ECF No. 101-5 ¶ 9.  On February 28, 2017, Ms. Cruz informed Defendant Reischerl that Plaintiff was taken off Wellbutrin.  *Id.* ¶ 10.  Defendant Reischerl then investigated the issue with Defendant Wright and subsequently wrote a letter to Plaintiff informing him that she could not direct Defendant Wright to prescribe a specific medication, but that Plaintiff could and should continue to work with the mental health staff at his facility to find a solution that worked best for him; additionally, if he could not resolve the issue there, he could seek the assistance of Defendant Berger.  *Id.* ¶ 13; ECF No 101-5 at 17.[5]  Other than this letter, Defendant Reischerl had no direct communication with Plaintiff regarding this issue.  *Id.* ¶ 16.

Based on this undisputed evidence it is clear that Defendant Reischerl took the appropriate action in Plaintiff's case.  Plaintiff has produced no evidence, and there is none in the record, that Defendant Reischerl was required to do anything more than she did.  Instead, the record indicates that she investigated the issue raised by Plaintiff, spoke to Defendant Wright, corresponded with Ms. Cruz, and ultimately determined both that she could not, and would not, mandate that Defendant Wright do anything different.  Once again, the fact that Plaintiff disagrees with this assessment is not enough to demonstrate a violation of Plaintiff's Eight Amendment rights.  Thus, Plaintiff fails to raise a material issue of fact as to his claims against Defendant Reischerl.

---

[5] There is no allegation or other evidence that Plaintiff ever wrote to Defendant Berger regarding this issue.

D. <u>Defendants Burns and Berger</u>

Turning to the remaining Defendants, Plaintiff alleges that they should be held liable based on their supervisory failures. ECF No. 10 at 125. The Second Circuit has recently made clear however, that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. In his opposition to Defendants' motion for summary judgment Plaintiff points to the test for supervisory liability laid out by the Second Circuit in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). Under *Colon*:

> "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Id.* at 873. Since *Tangreti*, however, courts in this district have recognized that the *Colon* factors no longer provide a basis for a Plaintiff to show liability. *See Rosa v. Cook*, No. 3:22-CV-00865 (SALM), 2022 WL 7517256, at *9 (D. Conn. Oct. 13, 2022); *Gibson v. Rodriguez*, No. 3:20-CV-953 (KAD), 2021 WL 327526, at *2 (D. Conn. Feb. 1, 2021). Thus, Plaintiff must raise a question of material fact as to whether Defendants Burns, and Berger personally participated in the alleged constitutional violation. The Court concludes he has not done so.

Initially, as discussed above, the Court has concluded that there was no constitutional violation; therefore, neither Defendant Burns nor Defendant Berger could have been personally involved in such a violation. Even assuming the existence of a constitutional violation, however,

16

the Court finds that Defendants Burns and Berger did not personally participate in such a violation.

As to Defendant Burns, he avers that he does not remember discussing Plaintiff's case with Defendant Reischerl and the only evidence he has seen that he was involved in any way is an email that he was copied on in 2017 between Defendant Reischerl and Ms. Cruz.  ECF No. 101-6 ¶ 23.  Defendant Burns further avers that even if he did speak to Defendant Reischerl about the matter, it was never formally escalated to him for review.  *Id.* ¶ 24.  Plaintiff offers no evidence in response to show Defendant Burns was involved in the decisions regarding his treatment.  With no evidence of Defendant Burns' actual involvement in Plaintiff's treatment, Plaintiff fails to raise a material issue of fact as to his claims against Defendant Burns.

As to Defendant Berger there is even less evidence.  Defendant Reischerl avers that Defendant Berger was copied on the email to Ms. Cruz as well, however other than that interaction there is no evidence that Defendant Berger had any idea that Plaintiff was even unhappy with his treatment.  There is no indication he would have spoken to any other Defendant about the events, and no indication he received any additional correspondence regarding the issue.  In response, Plaintiff has provided no evidence of Defendant Berger's involvement in his treatment and has thus failed to raise a genuine issue of material fact regarding Defendant Berger's liability.

### E. Defendants' Remaining Arguments

As Plaintiff has failed to raise a genuine dispute of material fact regarding the liability of any of the four defendants in the instant action, the Court need not and does not address the Defendants' additional arguments regarding exhaustion of administrative remedies and qualified immunity.

## IV.    CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment is GRANTED.  The Clerk is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 30th day of March, 2023.

                                               */s/ Sarala V. Nagala*
                                               SARALA V. NAGALA
                                               UNITED STATES DISTRICT JUDGE